## Case No. 9,047.

### MANNY v. DUNLAP.

[Woolw. 372; 1 3 West. Jur. 329; 17 Pittsb. Leg. J. 11.]

Circuit Court, D. Iowa. May Term. 1869.

AGENCY TO PROCURE INSURANCE — VERBAL CONTRACT—LIABILITY—NEGLIGENCE—SUBROGATION.

1. A direction by a principal to his agent to procure a policy of insurance is not satisfied by a verbal contract for insurance.

2. If an agent has undertaken to procure insurance, but has done it so negligently that a loss which occurs is not covered by the policy, he is liable to his principal.
[Cited in Marquardt v. French, 53 Fed. 606.]

3. If an agent to procure a policy of insurance merely makes a verbal contract for insurance, and a loss occurs, his principal cannot be put to uncertain and expensive resource of a suit on such contract against the insurer, but the agent must make good the loss.

4. If he have a valid verbal contract, he must pay his principal, when he will be entitled to an assignment of it, or may sue on it in the name of his principal.

This was a motion for a new trial.

---

1 [Reported by James M. Woolworth, Esq., and here reprinted by permission.]

MILLER, Circuit Justice. This is a motion for a new trial, founded on alleged erroneous instructions to the jury. The plaintiff, who was the owner of certain reaping and mowing machines, directed her agent by letter to procure a policy of insurance on them, with specific instructions as to the amount to be insured on each machine, and the time for which the insurance should run. No policy was executed, but the agent, who is defendant in this action, had some conversation with the agent of an insurance company, which, taken in connection with certain arrangements between them concerning money on deposit by one with the other, is claimed by the defendant to constitute a valid contract of insurance.

From the testimony, these facts are quite clear, that after the defendant received orders to insure, and before the machines were burned, about twenty-five days elapsed; that the defendant had available means of plaintiff's with which to pay the premium; and that, at any time during these twenty-five days, if he had called at the office of the insurance agent, and insisted on it, he could have received a policy which would have covered the loss.

The machines having been destroyed by fire, the insurance agent denied that he had made any insurance on them, and, if his testimony in the case is to be credited, he had not. The present action was brought to recover the value of the goods destroyed, and is founded on the neglect of the defendant to effect the insurance which he had been ordered to obtain. The jury were instructed, that if the defendant had money of the plaintiff's with which to pay the premiums, and if he could have done so by the use of reasonable diligence, it was his duty to have insurance made by a written policy of insurance; and that such duty was not performed by a verbal agreement or understanding for insurance between the defendant and the insurance agent. And the court refused to leave it to the jury to say whether a valid verbal contract of insurance had been made, or to consider that question further.

If these rulings are sound, the verdict must stand; if they are erroneous, it should be set aside. In this discussion, I would premise that the defendant received express instructions in writing to procure a "policy of insurance," a form of expression which is not satisfied by any verbal contract, though such contract may possibly be a valid one. I am not inclined to believe that this fact is material, otherwise than as showing that the defendant was without excuse in anything in the language of his instructions. I think that a direction by the owner of property to his agent to insure, would require an insurance by written policy, because that is the usual mode among prudent persons of doing the thing ordered. And I am further of opinion that a court is bound to know judicially that no prudent and ordinarily careful man would

for twenty-five days rely upon a verbal agreement for insurance, when, on any day of the twenty-five, he could without trouble or difficulty have received a policy.

The duties of agents are well understood. Those of an agent to procure insurance have been often considered by the courts, and are rigidly enforced. It has been decided in general terms that when an agent has undertaken, or it has become his duty, to insure, and without good reason he has neglected to do so, he is liable for all loss which may occur, that would have been covered by the policy. To this effect, among many other cases, are the following: Wilkinson v. Coverdale, 1 Esp. 75; Morris v. Summerl [Case No. 9,837]; [Ela v. French, 11 N. H. 356].[2]

Again, if the agent has undertaken to effect insurance, and has done it in a manner so negligent or unskilful that a loss which occurs is not covered by the policy, the agent is liable therefor. Story, Ag. § 218; Mallough v. Barber, 4 Camp. 150. In Wilkinson v. Coverdale, above cited, the ground of action was, that defendant having sold plaintiff certain premises, had promised to have his policy renewed for the benefit of his vendee. He did have it renewed, but neglected to have such indorsement made thereon as was necessary to enable the plaintiff to avail himself of it in case of loss. Lord Kenyon was of opinion that there was negligence sufficient to have made the defendant liable, if he had in fact promised to renew for plaintiff's benefit; but no such promise could be shown in proof, and there was a nonsuit. The case, however, shows his lordship's sense of the strict diligence required of one undertaking to procure insurance for another. In Callander v. Oelrichs, 5 Bing. N. C. 58, it appeared that defendants were agents for shipping plaintiff's corn, and undertook to use, and did use, their endeavors to effect insurance according to the instructions of plaintiff. Their efforts were unsuccessful, but they never informed plaintiff of their failure. The wheat was lost, and it was held that the agents were liable to plaintiff for their neglect to notify him of the failure to obtain insurance.

In the case under consideration, plaintiff had a right to insurance effected in the usual safe and secure manner, the more especially as he had instructed his agent to effect it in that manner. When a loss has occurred, the agent cannot be heard to say, "I did not do what you directed, nor as a prudent and cautious man under similar circumstances would do for himself. I departed from your instructions for my own convenience. But I have effected a valid insurance for you, and though its enforcement is uncertain, difficult, and costly, and though the contract is denied by the other party, and I have no other proof than my own oath, I insist on your accepting this as a discharge of my duty, and looking

to the insurance company, instead of to me, for indemnity." The plaintiff cannot be thrown upon this uncertain and expensive resource. He had a right to a written contract, which would surely bind the company; and if he has failed to obtain this through the negligence of defendant, the latter must make good the loss. If he has any such valid contract as he alleges, let him pay plaintiff, and he will be entitled to an assignment of it, or to sue on it in plaintiff's name for his own benefit. The result of such a suit will be, as it ought to be, at the risk of defendant.

These views are fully sustained by what was said by Mr. Justice Washington, in the case of De Tastett v. Cronsillat [Case No. 3,828]. "The law," he remarks, "is clear, that if a foreign merchant, who is in the habit of insuring for his correspondent here, receives an order for making an insurance, and neglects to do so, or does so differently from his orders, or in an insufficient manner, he is answerable, not for damages merely, but as if he were himself the underwriter, and he is of course entitled to the premium." The motion for a new trial is overruled, and judgment must be entered on the verdict.